UNITED STATES of America, Plaintiff–Appellee,

v.

Alton Clark BINGHAM, Defendant–Appellant.

No. 92–10040.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 17, 1992.

Decided May 7, 1993.

Dominic P. Gentile, Gentile, Porter & Kelesis, Las Vegas, NV, for defendant-appellant.

Joseph P. Dion, Asst. U.S. Atty., Las Vegas, NV, for plaintiff-appellee.

Before: NORRIS, BEEZER, and KLEINFELD, Circuit Judges.

PER CURIAM:

Alton Clark Bingham lied about his name when he sold securities through a brokerage firm. We consider whether that lie constituted securities fraud under 17 C.F.R. § 240.10b–5 (1992) ("Rule 10b–5").

Bingham sold securities through a brokerage firm under the name of his recently deceased client, Howard Laverne Crow, for whom Bingham had served as an accountant. The securities he sold were issued by Mariah International, Inc., a corporation in which Bingham was an officer and a director. The number of shares sold (66,000) was less than one-half of one percent of the total outstanding shares.

Bingham was indicted on several counts of securities fraud, mail fraud, money laundering, and aiding and assisting in the filing of false tax returns. After a bench trial, he was found guilty on the securities fraud and related mail fraud charges. He was acquitted on the remaining charges.

He now appeals, claiming there was insufficient evidence to support his convictions. We reverse.[1]

To violate Rule 10b–5, a misrepresentation or omission must be material. Information is material if there is "a substantial likelihood that the disclosure [of that information] would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Basic Inc. v. Levinson,* 485 U.S. 224, 231–32, 108 S.Ct. 978, 983, 99 L.Ed.2d 194 (1988) (quoting *TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976)).

In this case, the government introduced no evidence of the "total mix" of information available to the buyer of the Mariah stock. Instead, the government rested its case entirely on the fact that Bingham lied about his name and failed to disclose his status as an officer and director of Mariah. No evidence was introduced to show that investors would have found the misrepresented or omitted information significant in light of other information available about the Mariah stock. We hold that, on the evidentiary record before us, both the misrepresentation and the omission were immaterial as a matter of law.[2]

The government would have us adopt two per se rules, the first saying that falsification of the identity of a buyer or seller of securities is always material, and the second that officer or director status is always material. We decline the government's invitation to adopt such per se rules. Materiality must be judged in the context of the "total mix" of information available to investors.

To support its per se rule that officer status is always material, the government called two brokers to testify that they would always find a buyer's or seller's status as a corporate officer to be of interest. But this testimony is far too abstract to satisfy the materiality requirement in a particular case. The government did not prove that investors would have considered Bingham's officer status a significant factor given other information about Mariah stock that was available to them.

A hypothetical helps demonstrate how the government's per se rule reaches too broadly. Suppose an officer of IBM sells an infinitesimal percentage of outstanding IBM stock without disclosing that she is an officer. Under the government's per se rule, such an officer would have made an omission of material fact no matter how much information about IBM was independently available to investors.

The government also argues that Bingham defrauded his brokers.[3] But the government failed to prove that Bingham's lie about his identity created any real risk of loss for the brokers. Bingham *actually owned* the stock,

---

1. Because we reverse the securities fraud convictions for insufficient evidence, we do not reach the question of whether the district court erred in denying Bingham's motion to suppress evidence that he claims was illegally obtained.

2. The government does not contend that Bingham traded on any material, non-public information that he may have had as a Mariah insider.

3. We assume, without deciding, that Rule 10b–5 prohibits fraud against brokers as well as fraud against investors. *Cf. United States v. Naftalin,* 441 U.S. 768, 99 S.Ct. 2077, 60 L.Ed.2d 624 (1979); *United States v. Tager,* 788 F.2d 349 (6th Cir.1986); *A.T. Brod & Co. v. Perlow,* 375 F.2d 393 (2d Cir.1967).

a fact that distinguishes this case from *United States v. Tager*, 788 F.2d 349 (6th Cir. 1986). In *Tager*, the defendant had no intention of going through with the transaction unless the stock price rose, enabling him to make a profit. In contrast, Bingham never "induc[ed] a broker to commit its resources," *id.* at 355, to a transaction to which he was not unconditionally committed.

We hold that, on the evidentiary record before us, Bingham's use of a false identity was not material. *Cf. TSC Industries, Inc. v. Northway*, 426 U.S. 438, 450, 96 S.Ct. 2126, 2133, 48 L.Ed.2d 757 (1976) (if omission is "so obviously important to an investor [ ] that reasonable minds cannot differ on the question of materiality," then issue of materiality can be resolved as matter of law). Because Bingham's mail fraud convictions depend on his securities fraud convictions, the judgments on all counts are reversed.

The convictions are REVERSED.