**UNITED STATES of America, Appellee,**

v.

**Robert A. DiIANNI, Defendant, Appellant.**

No. 95–1524.

United States Court of Appeals,
First Circuit.

Heard May 7, 1996.

Decided June 24, 1996.

Francis J. DiMento, with whom DiMento & Sullivan, Boston, MA, was on brief for appellant.

Mark J. Balthazard, Assistant United States Attorney, with whom Donald K. Stern, United States Attorney, was on brief for appellee.

Before CYR, Circuit Judge, ALDRICH, Senior Circuit Judge, and GERTNER,* District Judge.

---

* Of the District of Massachusetts, sitting by designation.

1. The Rule provides, in relevant part:
   It shall be unlawful for any person, directly or indirectly, by the use of ... any facility of any national securities exchange,
   (a) To employ any device, scheme, or artifice to defraud,
   (b) To make any untrue statement of a material fact or to omit to state a material fact

BAILEY ALDRICH, Senior Circuit Judge.

Defendant Robert A. DiIanni found himself in serious trouble with the Securities and Exchange Commission; was indicted, and ultimately pleaded guilty to three counts of mail fraud, three counts of wire fraud, one count of interstate transportation of property taken by fraud and one count of securities fraud. He received two consecutive sentences of 42 and 60 months, execution of the latter suspended with three years supervised release. A special condition of his probation required compliance with a permanent injunction entered in an SEC-initiated civil case that arose out of some of the same fraudulent activities. This forbade defendant from, *inter alia,* engaging in any conduct "in connection with the purchase or sale of any security," that would violate Rule 10b–5,[1] under the Securities Exchange Act, 15 U.S.C. § 78j(b). In May, 1992, defendant was released from prison and, in due course, engaged in conduct which led the government to successfully charge him with having breached this special condition by impersonating his stepson in securities dealings with the brokerage firm National Financial Services Corporation ("NFSC"), as well as a general condition that he refrain from lying to his probation officer. The court revoked probation and sentenced defendant to two years imprisonment. He appeals. We affirm.

To revoke probation the sentencing court must make both a retrospective determination that the probationer has violated a condition of his probation, and a discretionary, prospective determination that any violation(s) warrants revocation. *Black v. Romano,* 471 U.S. 606, 611, 105 S.Ct. 2254, 2257–58, 85 L.Ed.2d 636 (1985) (revocation must meet due process requirements); *United States v. Gallo,* 20 F.3d 7, 13 (1st Cir.1994).

---

necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
   (c) To engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.
17 C.F.R. § 240.10b–5.

The government need not prove a violation beyond a reasonable doubt, but must merely satisfy the court that a violation occurred. *Id.* at 14. The second step requires individualized evaluation of the particular probationer and "a predictive decision, based in part on [an] assessment of [his] propensity toward antisocial conduct." *Id.* We review the court's decision for abuse of discretion. *Id.* at 13; *United States v. Nolan*, 932 F.2d 1005, 1006 (1st Cir.1991) (court's revocation determination "will not be disturbed absent a showing of manifest abuse").

■ Condition Four of defendant's probation requires that he "answer truthfully all inquiries by the probation officer...." Defendant does not dispute that he falsely denied to his probation officer that he was "in any way involved" in managing or trading the securities appearing on a brokerage account statement that the officer happened to notice during an unannounced visit to defendant's home. He simply contends his prevarication is immaterial because, contrary to what the probation officer apparently believed, the conditions of his probation do not forbid him from trading in securities. Condition Four is not limited to inquiries that relate to other conditions of defendant's probation, however, and cannot be read to leave defendant free to pick and choose which inquiries deserve a truthful answer.

■ The court also found defendant had willfully concealed his identity—and therefore his status as felon convicted for fraud in connection with securities transactions—as the person controlling certain brokerage accounts with NFSC, and the limited partnerships ostensibly behind them, and that this amounted to a violation of defendant's special condition of probation. The record discloses that defendant incorporated a consulting outfit in his wife's name, set up two limited partnerships naming his stepson, Mark Pinguey, as general partner, and opened a margin account with NFSC for each partnership, signing Pinguey's name. He then deposited 600,000 shares of a marginable stock borrowed through the consulting firm to one of the accounts, enabling him to obtain a $2.5 million credit from NFSC to purchase more stock. During all ensuing transactions and other dealings with NFSC, defendant held himself out as Pinguey. Even when defendant, posing as Pinguey, was asked by an NFSC representative whether "a Mr. DiIanni" was impersonating Pinguey, defendant kept up the ruse. The record supports the court's finding that defendant deliberately made untrue statements in identifying and representing himself as Pinguey in his dealings with NFSC, and—contrary to his story that he was acting under Pinguey's "authorization"—did so systematically with the intent to conceal the fact that he, not Pinguey, controlled the transactions that NFSC processed through the accounts.

In order for defendant's untruths and omissions to come within the prohibitions of the civil injunction, however, they had to have been of "material fact" within the meaning of Rule 10b–5. 17 C.F.R. § 240.10b–5(b). *See Basic Inc. v. Levinson*, 485 U.S. 224, 231, 108 S.Ct. 978, 983, 99 L.Ed.2d 194 (1988). The true identity of an investor is not always material, *see United States v. Bingham*, 992 F.2d 975 (9th Cir.1993), but where there is a "substantial likelihood" that a reasonable decision-maker would have viewed the omitted fact "as having significantly altered the total mix of information made available," the Rule's materiality requirement is fulfilled. *Basic Inc.*, 485 U.S. at 231–32, 108 S.Ct. at 983 (internal quotations omitted). The record indicates that in his heyday defendant was a successful, high-profile investment advisor, well-known in the financial world. His indictment and convictions were well documented in the local press, which detailed the millions he bilked from his victims, as well as the fast and loose financial dealings that had prompted SEC sanctions years earlier. A 1990 feature on the cover of the Boston Globe's business pages dubbed him "one of Boston's most notorious investment advisors of the 1980s," and reported his post-incarceration plans to jump back into the financial fray upon release from prison. Had defendant signed his own name to the margin account agreements in December of 1992, rather than Pinguey's, there is a substantial likelihood that it would have rung someone's bell at NFSC, and the means of uncovering the details of defendant's past were readily

available. We have no doubt this information would have significantly transformed the picture.[2] We also think it reasonable to conclude that an intent to preclude NFSC from obtaining this information was in large measure the reason defendant employed Pinguey as his puppet. Defendant's behavior was manifestly outside the bounds of Rule 10b–5.[3]

Given the relationship between defendant's probation infractions and his past criminal conduct, it was not unreasonable for the court to conclude that defendant's post-release activities suggested he was positioning himself incognito to get right back into his old heists. The court found his new offenses "in many ways a kind of shadow of the offenses that led initially to Mr. DiIanni's incarceration.... Moreover, they come after considerable experience here with violations of the federal securities law, a SEC injunction, a criminal prosecution.... And so, what I have before me is a recidivist who—offered any opportunity—will undertake to engage in conduct that is proscribed by the federal securities laws." The court reasonably found defendant's efforts to explain away his behavior not credible, and his propensity for "anti-social" conduct substantial.

Finally, defendant contends that a two year sentence is too harsh. It was well within the court's authority to impose and, for the reasons amplified above, we find no abuse of discretion.

*Affirmed.*

---

2. The court credited testimony that NFSC would not have entered into any margin account agreements with a convicted felon. It is of no moment that NFSC did not perform a credit check on Pinguey, which of course would not have revealed anything about defendant. Defendant's assertion in his appellate brief that NFSC was not checking any accounts at the time is unsupported and in any event does not alter the fact that, under defendant's particular circumstance, his identity alone would have been material to NFSC's decision whether to open the margin accounts. *Compare Bingham*, 992 F.2d at 976 (no evidence was introduced to show investors would have found the misrepresented or omitted information significant).

3. The civil injunction requires defendant to conform his behavior to the provisions of Rule 10b–5. Proof of material reliance, although necessary to state a private cause of action for *damages* under Rule 10b–5, *see Estate of Soler v. Rodriguez*, 63 F.3d 45, 53 (1st Cir.1995), is not required to demonstrate violation of the terms of the injunction, and therefore also of defendant's special condition of probation.