NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 14-30180 |
| Plaintiff-Appellee, | ) | D.C. No. 1:13-cr-00091-BLW-2 |
| v. | ) | MEMORANDUM[*] |
| MARK A. ELLISON, | ) | |
| Defendant-Appellant, | ) | |
| UNITED STATES OF AMERICA, | ) | No. 14-30183 |
| Plaintiff-Appellee, | ) | D.C. No. 1:13-cr-00091-BLW-4 |
| v. | ) | |
| DAVID D. SWENSON, | ) | |
| Defendant-Appellant, | ) | |
| UNITED STATES OF AMERICA, | ) | No. 14-30184 |
| Plaintiff-Appellee, | ) | D.C. No. 1:13-cr-00091-BLW-3 |
| v. | ) | |
| JEREMY S. SWENSON, | ) | |

---

[*]This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

```
       Defendant-Appellant,        )
                                    )
                                    )
UNITED STATES OF AMERICA,           )        No. 14-30185
                                    )
       Plaintiff-Appellee,          )        D.C. No. 1:13-cr-00091-BLW-1
                                    )
       v.                           )
                                    )
DOUGLAS L. SWENSON,                 )
                                    )
       Defendant-Appellant,         )
                                    )
```

Appeal from the United States District Court
for the District of Idaho
B. Lynn Winmill, Chief District Judge, Presiding

Argued and Submitted June 5, 2017
Seattle, Washington

Before: FERNANDEZ, CALLAHAN, and IKUTA, Circuit Judges.

Douglas Swenson, Mark Ellison, David Swenson, and Jeremy Swenson (collectively, the Appellants) appeal their convictions after a joint jury trial. All of the Appellants also appeal their restitution orders, and Douglas, David, and Jeremy also appeal their prison sentences. The Appellants worked for the DBSI Group[1] and were convicted for their roles in defrauding investors in fifteen investment

---

[1]"DBSI Group" refers to the whole DBSI group of companies.

offerings. Each of the Appellants was convicted of securities fraud,[2] and Douglas was also convicted of wire fraud.[3] We affirm the Appellants' convictions and sentences in virtually all respects; however, we vacate the restitution order against Ellison, David, and Jeremy, and remand for the district court for recalculation of the amount.

(A)  Jury Instructions

The Appellants challenge a number of jury instructions given in their joint trial. Each challenge fails.

(1)  Scheme to defraud

The Appellants hypothesize that the district court's Instruction 40, which defines "a scheme to defraud" for the securities and wire fraud charges, could have allowed the jury to convict them for silence, even in the absence of a duty to disclose any information to investors. The district court did not abuse its discretion in formulating this instruction. *See United States v. Lloyd*, 807 F.3d 1128, 1164–65 (9th Cir. 2015). In general, guilt for securities fraud and wire fraud "is not restricted solely to isolated misrepresentations or omissions." *Blackie v. Barrack*, 524 F.2d 891, 903 n.19 (9th Cir. 1975); *see* 17 C.F.R. § 240.10b-5(a), (c);

_____

[2] 15 U.S.C. §§ 78j(b), 78ff(a); 18 U.S.C. § 2; *see also* 17 C.F.R. § 240.10b-5.

[3] 18 U.S.C. § 1343.

3

*see also Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 152–53, 92 S. Ct. 1456, 1471–72, 31 L. Ed. 2d 741 (1972); *United States v. Woods*, 335 F.3d 993, 997–98 (9th Cir. 2003). Moreover, in this case, it was undisputed that a number of statements were made to investors in connection with the investment offerings. *Cf. Chiarella v. United States*, 445 U.S. 222, 226, 100 S. Ct. 1108, 1113, 63 L. Ed. 2d 348 (1980). Because statements were made to investors, the securities laws imposed a duty to disclose material facts necessary to render those statements not misleading, regardless of whether any fiduciary relationship with investors existed. *See S.E.C. v. Fehn*, 97 F.3d 1276, 1290 n.12 (9th Cir. 1996); *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 504 (9th Cir. 1992); *see also* 17 C.F.R. § 240.10b-5(b). On this record, the instruction was correct and did not mislead the jury. *See United States v. Smith*, 831 F.3d 1207, 1219 (9th Cir. 2016).[4]

(2) Materiality

The Appellants argue that Instruction 30, which defines materiality for securities fraud, did not tell the jury to consider the purported omission or

---

[4]We decline to consider Douglas's conclusory assertion in his reply brief that the jury's verdicts were inconsistent. *See United States v. Romm*, 455 F.3d 990, 997 (9th Cir. 2006); *Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994).

misstatement in light of all the circumstances.[5] At bottom, "'materiality depends on the significance the reasonable investor would place on the withheld or misrepresented information,'"[6] and a reasonable investor would consider all of the circumstances in determining whether a false statement or omitted fact was significant.[7] By referring to a reasonable investor, the instruction adequately communicated that the jury should consider relevant circumstances in evaluating materiality. *See United States v. Hofus*, 598 F.3d 1171, 1174 (9th Cir. 2010). We reject the Appellants' speculation that the jury could have convicted them based on inadequate evidence of materiality: there was sufficient evidence to support the jury's verdicts. *See Griffin v. United States*, 502 U.S. 46, 59–60, 112 S. Ct. 466, 474, 116 L. Ed. 2d 3714 (1991). We also reject the Appellants' suggestion that the jury should have been told to consider information that was made available to third parties, but not to investors, when it evaluated the materiality of a particular fact to

---

[5]We decline to consider Douglas's argument in reply regarding the degree of importance required to establish materiality. *See Romm*, 455 F.3d at 997.

[6]*No. 84 Empl.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 934 (9th Cir. 2003); *see also United States v. Tarallo*, 380 F.3d 1174, 1182 (9th Cir. 2004), *amended*, 413 F.3d 928, 928 (9th Cir. 2005).

[7]*See TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S. Ct. 2126, 2132, 48 L. Ed. 2d 757 (1976) (defining materiality in terms of the "'total mix' of information made available").

a reasonable investor. *See United States v. Bingham*, 992 F.2d 975, 976 (9th Cir. 1993) (per curiam) (materiality is evaluated in the context of the "information available to the buyer of the . . . stock").

(3)    Defense of investor negligence

Instruction 41 told the jury that it was not a defense that "investors may have been gullible, careless, naive or negligent." The Appellants argue that the instruction undermined the requirement that materiality be determined objectively, and that they should have been allowed to argue that investor carelessness was a defense where the government argued that they were guilty and pointed to victim investors who failed to understand the disclosures. We review this claim for plain error because the Appellants did not object to the district court's formulation of this instruction on this ground. *See United States v. Anderson*, 741 F.3d 938, 945–46, 946 n.5 (9th Cir. 2013).

The instruction correctly stated the law[8] because materiality is determined objectively, so that a victim's negligence is not a defense. *United States v. Lindsey,* 850 F.3d 1009, 1015–16 (9th Cir. 2017); *see also United States v. Reyes*, 577 F.3d 1069, 1075 (9th Cir. 2009). The government did present testimony from victim investors who said that they had been deceived, but the Appellants were not

_____

[8] *See Smith*, 831 F.3d at 1216.

6

precluded from arguing that, nevertheless, a reasonable investor would not have been. However, if the form of the instruction injected some ambiguity, and even if it was plain error to so instruct,[9] the Appellants have not demonstrated that the error affected the outcome of their trial, and therefore fail to demonstrate plain error. *See United States v. Ameline*, 409 F.3d 1073, 1078 (9th Cir. 2005) (en banc). First, while the Appellants argue that nothing was misleading or omitted, the materiality of the financial information in question was essentially uncontroverted. *See Bear*, 439 F.3d at 570; *see also United States v. Jenkins*, 633 F.3d 788, 802 (9th Cir. 2011); *S.E.C. v. Murphy*, 626 F.2d 633, 653 (9th Cir. 1980). Second, in order for the error to have affected the verdict, the jury would had to have drawn the "far-fetched inference"[10] that: (1) the Appellants' statements, omissions, or actions would not have been considered important by a reasonable investor, and (2) the Appellants should still be convicted because those statements or actions nevertheless deceived these unreasonable victims. There would be no "genuine possibility that the jury convicted" Appellants on that basis. *See Bear*, 439 F.3d at 568, 570.

---

[9]*See United States v. Della Porta*, 653 F.3d 1043, 1052 (9th Cir. 2011); *United States v. Bear*, 439 F.3d 565, 569 (9th Cir. 2006).

[10]*See Smith*, 831 F.3d at 1220; *see also Middleton v. McNeil*, 541 U.S. 433, 438, 124 S. Ct. 1830, 1833, 158 L. Ed. 2d 701 (2004) (per curiam).

(4)    Good faith and willfullness

Although some of the Appellants proposed their own jury instruction regarding good faith, they did not object to the district court's definition of "willfully." Thus, we review the instruction regarding willfullness for plain error. *See Anderson*, 741 F.3d at 945–46. The district court's Instruction 30 correctly stated the law regarding the intent[11] required for securities fraud: "'willfully' . . . means intentionally undertaking an act that one knows to be wrongful," and "does *not* require that the actor know specifically that the conduct was unlawful." *Tarallo*, 380 F.3d at 1188. The definition of "willfully" that typically applies to other crimes does not apply to securities fraud. *Id.* at 1186–88; *see also* 15 U.S.C. § 78ff(a). Because the instruction correctly defined the requisite intent, the Appellants were not entitled to a separate good faith instruction. *United States v. Green*, 745 F.2d 1205, 1209 (9th Cir. 1984); *see also United States v. Shipsey*, 363 F.3d 962, 967–68 (9th Cir. 2004).

(B)    Sufficiency of the evidence

We have carefully reviewed the record, and construed in the light most favorable to the prosecution, there was a plethora of evidence from which a

---

[11]*United States v. O'Hagan*, 521 U.S. 642, 665–66, 117 S. Ct. 2199, 2214, 138 L. Ed. 2d 724 (1997); *see also* 15 U.S.C. § 78ff(a).

rational juror could have found that each Appellant was guilty of the crimes for which he was convicted. *See United States v. Nevils*, 598 F.3d 1158, 1161 (9th Cir. 2010) (en banc).

There was sufficient evidence to support a determination that Douglas, with the requisite willful intent, approved the Private Placement Memoranda (PPMs) for the various investment offerings, each of which contained materially misleading statements regarding the financial viability of DBSI Master Leaseco, Inc. (Master Leaseco), DBSI, Inc. (formerly known as DBSI Housing, Inc.), and the Master Lease Portfolio (MLP), and regarding the use of investors' "Accountable Reserves" funds for the company's ongoing operations. In the words of one witness, investors had to go on "an Easter egg hunt to figure out what's going on." For example, there were misleading statements regarding: (1) DBSI, Inc.'s net worth, including substantial receivables from technology company affiliates and whether those were current assets; (2) the use of investors' accountable reserves; (3) the financial health of the MLP properties overall; (4) the assets of Master Leaseco; and (5) the status and shutdown of FOR1031. Moreover, there was sufficient evidence to support the jury's determination that the statements were material and would have misled a reasonable investor, even in the absence of expert testimony, especially when the PPMs and accompanying financial

9

statements were not prepared according to Generally Accepted Accounting Principles (GAAP). *Jenkins*, 633 F.3d at 802, 802 n.3; *cf. Sparling v. Daou (In re Daou Sys., Inc.)*, 411 F.3d 1006, 1016 (9th Cir. 2005) (violating GAAP by overstating revenues may state a claim for securities fraud (accounting fraud)). The existence of evidence inconsistent with an intent to defraud is beside the point, because the jury was entitled to credit the evidence suggesting Douglas's willful intent to deceive investors. *See Nevils*, 598 F.3d at 1169.

There was also sufficient evidence to support a determination that Ellison, Jeremy, and David committed securities fraud. At the very least, it was sufficient to show that they aided and abetted a fraudulent act, practice, or course of business. 17 C.F.R. § 240.10b-5(c); *see also* 18 U.S.C. § 2(a).[12]

For example, there was evidence that (1) Ellison approved the PPMs that contained misleading statements, despite being repeatedly informed by others about their misleading nature, and despite knowing that investors wanted more transparency about the financial condition of DBSI Group and the MLP, and Ellison attempted to dissuade an employee from continuing to question the

---

[12]The jury was properly instructed regarding aiding and abetting liability in Instruction 33. *See Rosemond v. United States*, __ U.S. __, __, 134 S. Ct. 1240, 1245, 188 L. Ed. 2d 248 (2014); *United States v. Garcia*, 400 F.3d 816, 819 (9th Cir. 2005); *see also United States v. Dearing*, 504 F.3d 897, 901 (9th Cir. 2007).

misleading nature of the statements; (2) David knew the state of DBSI Group because he was a senior executive who received regular reports and attended regular meetings at which the financial difficulties of the MLP and DBSI, Inc. were discussed, and David approved language in the PPMs that investors' Accountable Reserves could not be used for the company's general operations, even though he told another DBSI Group employee that the funds could be used for that purpose; (3) Jeremy annually directed that money be transferred into the Master Leaseco account just before its audits in order to inflate the account balance, served on a committee responsible for monitoring the repayment of loans made from the account (although the evidence also showed that repayments were not made), was on the committee responsible for lending money from the 2008 Notes Offering to the technology companies, and was also present at meetings where concerns regarding the MLP's and DBSI, Inc.'s finances were discussed, including concerns about whether it was misleading not to show the loans to affiliated technology companies as a separate line item in DBSI, Inc.'s financial statements.[13]

---

[13]We also reject Jeremy's argument that his securities fraud convictions are inconsistent with Douglas's convictions for wire fraud and for committing securities fraud by other, additional means. Even if there were some inconsistency (which there is not), it would not undermine the validity of Jeremy's convictions.

(continued...)

(C)    Conduct required to violate Rule 10b-5(a) or (c)

The Appellants argue that their convictions pursuant to Rule 10b-5(a) and (c) cannot stand because a conviction for violating those provisions must be premised on conduct separate from misrepresentations or omissions that violate Rule 10b-5(b). *See WPP Lux. Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039, 1057–58 (9th Cir. 2011). Assuming without deciding that this principle applies in the context of a criminal prosecution, there was evidence of the fraudulent scheme or course of business beyond the misrepresentations made to investors in connection with the securities sales: for example, Douglas's withholding important information from his own sales staff; Jeremy's directing money transfers into the Master Leaseco account; Ellison's attempt to dissuade employees from pursuing greater transparency; and David's efforts to conceal from lenders DBSI Group's sales of properties to TIC investors. Thus, the Appellants' convictions were supported by evidence of conduct beyond isolated misrepresentations and omissions. *See Affiliated Ute*, 406 U.S. at 153, 92 S. Ct. at 1472; *cf. WPP Lux.*, 655 F.3d at 1057–58.[14]

---

[13](...continued)
*United States v. Hart*, 963 F.2d 1278, 1281 (9th Cir. 1992).

[14]We decline to address Jeremy's conclusory assertion that his convictions

(continued...)

12

(D)    Agent Morse's credibility

The Appellants argue that the district court erred by providing two instructions to the jury regarding Federal Bureau of Investigation (FBI) Agent Rebekah Morse's use of a mobile device during a sidebar conference while she was testifying: (1) that Morse was not transmitting text messages during the sidebar, but rather was entering a code to turn off her device (the "First Instruction"), and (2) that the jury should disregard the First Instruction because (a) while Agent Morse gave that explanation for her behavior under oath, it had subsequently been determined that Agent Morse exchanged text messages with her husband during a sidebar, and (b) that the jury could consider those facts in assessing her credibility (the "Second Instruction").

(1)    Vouching

We review the Appellants' argument that the district court vouched for Agent Morse for plain error because the Appellants did not contemporaneously object on this ground.  *United States v. Brooks*, 508 F.3d 1205, 1209 (9th Cir.

_____

[14](...continued)
violated the Double Jeopardy clause of the Fifth Amendment.  *Greenwood*, 28 F.3d at 977; *see also* U.S. Const. amend. V.

13

2007). While we are dubious that a judge can be said to vouch for a witness,[15] even if it did occur here, it did not constitute plain error. The First Instruction merely indicated that there had been no message, and the Second Instruction told the jury to disregard the first one and indicated, in effect, that she may have been untruthful and that the jury could consider that. That was favorable, not prejudicial, to the Appellants.

> (2) Rule 605

The Appellants further argue that the First and Second Instructions violated Federal Rule of Evidence 605 by adding evidence outside the trial record. *See United States v. Berber-Tinoco*, 510 F.3d 1083, 1091 (9th Cir. 2007). Assuming a Rule 605 violation, any error was harmless, and, indeed, beneficial to the Appellants. *See id.* at 1092–93; *United States v. Heredia*, 483 F.3d 913, 923 (9th Cir. 2007).

> (3) Impeachment evidence

The Appellants argue that the district court erred by excluding evidence related to Agent Morse's texting pursuant to Federal Rule of Evidence 403. The

---

[15]We note that the government conceded in the district court that the First Instruction constituted vouching.

district court properly exercised its discretion[16] to determine that any evidence beyond what the jury had already been told was more prejudicial than probative, and was cumulative. *See United States v. Vallejo*, 237 F.3d 1008, 1016 (9th Cir.), *amended by* 246 F.3d 1150, 1150 (9th Cir. 2001). For the same reason, the exclusion of evidence did not violate the Appellants' right to present a complete defense. *See Haischer*, 780 F.3d at 1284.

(E)     Courtroom closures

The Appellants claim that the closure of two sets of proceedings violated their right to a public trial: the closure of a portion of the pre-trial hearing in which FBI Agent Martinen testified (the "Martinen Hearing") and the closure of certain proceedings related to Agent Morse's texting (the "Morse Proceedings"). *See* U.S. Const. amend. VI; *United States v. Waters*, 627 F.3d 345, 360 (9th Cir. 2010).

(1)     Martinen Hearing

Assuming that the public trial right attached to the Martinen Hearing,[17] the district court did not err by closing the courtroom for about half an hour while Agent Martinen testified regarding another agent. The district court identified an

---

[16]*United States v. Haischer*, 780 F.3d 1277, 1281 (9th Cir. 2015); *see also* Fed. R. Evid. 403.

[17]*See Waters*, 627 F.3d at 360–61.

15

important interest that would be prejudiced by a public hearing;[18] the closure was narrowly tailored to the portion of the Martinen Hearing concerning whether Agent Martinen's destruction of certain documents was related to her purported fear of the other agent (it was not);[19] the district court considered the alternative of Appellants asking questions without specifying the other agent's involvement;[20] and the district court's findings are clear in context and sufficient to enable appellate review.[21] The district court did not err by closing the courtroom for foundational consideration of whether Agent Martinen's issues with the other agent were related to her destruction of certain documents related to this case.

### (2) Morse Proceedings

As to the Morse proceedings, the Appellants' statements, actions, and failures to object constituted a waiver of any public trial rights they had. *See United States v. Perez*, 116 F.3d 840, 845 (9th Cir. 1997) (en banc); *see also Levine v. United States*, 362 U.S. 610, 618–20, 80 S. Ct. 1038, 1043–44, 4 L. Ed. 2d 989 (1960); *United States v. Rivera*, 682 F.3d 1223, 1232–33, 1233 n.6 (9th Cir.

---

[18] *See Waller v. Georgia*, 467 U.S. 39, 45, 104 S. Ct. 2210, 2215, 81 L. Ed. 2d 31 (1984).

[19] *See United States v. Yazzie*, 743 F.3d 1278, 1289 (9th Cir. 2014).

[20] *See id.* at 1289–90.

[21] *See id.* at 1290.

16

2012).  Moreover, the matters taken up were administrative details regarding preservation of evidence and how to proceed with the jury while information was being gathered.  *See United States v. Ivester*, 316 F.3d 955, 959 (9th Cir. 2003).  No public trial rights attached.

(F)    Voir dire

The district court did not abuse its discretion[22] when it refused to ask the venire about any bias any of them had with respect to the Church of Jesus Christ of Latter-Day Saints.  No supplemental question was required because this case did not involve religion, let alone any purported religious bias,[23] and because the Appellants sought to uncover merely a "general impression or prejudice against a group."[24]  The Appellants presented no evidence suggesting that religious bias was "'an actual and likely source of prejudice'" in this case.[25]

(G)    Required disclosure of defense non-impeachment evidence

The Appellants argue that the district court violated their constitutional

---

[22]*United States v. Anekwu*, 695 F.3d 967, 978 (9th Cir. 2012).

[23]*Id.* at 980.

[24]*United States v. Toomey*, 764 F.2d 678, 682 (9th Cir. 1985).

[25]*United States v. Jones*, 722 F.2d 528, 530 (9th Cir. 1983) (quoting *United States v. Robinson*, 475 F.2d 376, 381 (D.C. Cir. 1973)).  The district court's references to anti-LDS bias summarized the Appellants' arguments and were not findings of fact.

17

rights by requiring them to provide reciprocal discovery to the government by disclosing the non-impeachment documents they intended to use at trial.[26] *See* Fed. R. Crim. P. 16(b)(1)(A); *United States v. Swenson*, 298 F.R.D. 474, 477–78 (D. Idaho 2014); *see also United States v. Fort*, 472 F.3d 1106, 1109 (9th Cir. 2007); *United States v. Aceves-Rosales*, 832 F.2d 1155, 1156 (9th Cir. 1987). The district court properly refused to limit Appellants' production obligation to those exhibits they planned to introduce with their own witnesses by refusing to cabin their "case-in-chief" to the period after which they called their first witness at trial, because a defendant may establish his defense by cross-examining the government's witnesses. *See, e.g.*, *United States v. Hernandez-Meza*, 720 F.3d 760, 762–63, 765 (9th Cir. 2013) (failure of proof defense); *Notaro v. United States*, 363 F.2d 169, 174 (9th Cir. 1966) (affirmative defense).[27] The district court's order did not violate Rule 16.

Because the district court's order merely enforced Appellants' reciprocal

---

[26]That did not include documents that could be used for impeachment, even if they had some non-impeachment content also.

[27]Moreover, the Appellants' alternative temporal definition of case-in-chief would impinge on the district court's discretion to "determine generally the order in which parties will adduce proof." *Geders v. United States*, 425 U.S. 80, 86, 96 S. Ct. 1330, 1334, 47 L. Ed. 2d 592 (1976).

discovery obligations,[28] it did not violate their constitutional rights. *See United States v. Urena*, 659 F.3d 903, 908–09 (9th Cir. 2011). Moreover, the scope of the order was properly limited to the production of non-impeachment evidence—i.e., to evidence that was "offered to show an alternative view of the truth."[29]

(H)    Redaction and limited admission of exhibit

Douglas[30] argues that the district court should not have limited the jury's consideration of exhibit 7452 (an email from Ellison to the legal department regarding additional disclosures to be made in connection with the PPM accompanying the 2008 Notes Offering) to its reflection of Ellison's state of mind. The district court properly limited consideration of the email because it was hearsay, and was relevant only insofar as it was true that Ellison indeed believed that additional disclosures were necessary. *See* Fed. R. Evid. 801(c)(2).[31]

Douglas's argument that the district court abused its discretion when it

---

[28] *See* Fed. R. Crim. P. 16(a)(1)(E).

[29] *Bemis v. Edwards*, 45 F.3d 1369, 1372 (9th Cir. 1995).

[30] All of the Appellants join this argument, but they do not assert any arguments other than those raised by Douglas; thus, their challenges fail for the same reasons that his do.

[31] To the extent there was any error in giving the limiting instruction, it was harmless, especially in light of the fact that there was no dispute that the 2008 Notes PPM contained additional disclosures, or that Ellison approved those disclosures.

redacted the references to him in exhibit 7452 fares no better. *See Larez v. City of Los Angeles*, 946 F.2d 630, 642 (9th Cir. 1991). Their relevance lay only in the truth of the matters asserted by Ellison in the email: that is, the references to Douglas were relevant only insofar as Ellison accurately reported that Douglas had "reached the same conclusion" and agreed with him that more disclosure was needed. They were properly redacted.

(I)    Admission of prior testimonial statements by co-defendants

The district court admitted several out-of-court statements made by Ellison, Jeremy, and David, which the government conceded were testimonial. Because the district court did not instruct the jury to consider each statement as evidence only against the declarant,[32] and not against his co-defendants, admission of the statements violated the confrontation rights[33] of each non-declarant co-defendant.[34] The only remaining question is whether the errors were harmless beyond a reasonable doubt. *United States v. Nguyen*, 565 F.3d 668, 675 (9th Cir. 2009).

---

[32]None of the Appellants requested a limiting instruction, despite the district court's invitation to them to do so.

[33]U.S. Const. amend. VI; *Richardson v. Marsh*, 481 U.S. 200, 206, 107 S. Ct. 1702, 1706–07, 95 L. Ed. 2d 176 (1987).

[34]*See Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 314 n.4, 129 S. Ct. 2527, 2534 n.4, 174 L. Ed. 2d 314 (2009); *United States v. Sauza-Martinez*, 217 F.3d 754, 760 (9th Cir. 2000).

20

The errors were harmless. As to Jeremy, David, and Ellison, each statement concerned the declarant's personal responsibilities and knowledge of the state of DBSI Group's operations and finances. None of the statements implicated those non-declarants or supported a disputed element of the government's case against them. *See United States v. Hoac*, 990 F.2d 1099, 1105 (9th Cir. 1993); *cf. Nguyen*, 565 F.3d at 675 (error not harmless where statement helped to establish the defendant's knowledge). As to Douglas, one statement referred to him expressly by name, but it merely identified him as potentially having determined the amount of accountable reserves for certain properties; the existence of accountable reserves for each property was not in dispute, and thus the statement was not incriminating. *See Hoac*, 990 F.2d at 1105. Douglas argues that the other statements incriminated him because they implicated DBSI Group, and a statement about DBSI Group was tantamount to a statement about him. However, DBSI Group was a large organization and the case was not presented on an alter ego theory. Even if the statements were somewhat incriminating of Douglas, they were not about his own actions and were minimally incriminating when compared to the other evidence in the case. That is, at most they were "merely cumulative of other overwhelming and essentially uncontroverted evidence properly admitted." *United States v. Gillam*, 167 F.3d 1273, 1277 (9th Cir. 1999). In light of all of the other evidence

21

regarding Douglas's guilt, the statements were harmless beyond a reasonable doubt.

(J)     Admission of evidence of undisclosed loans

We review de novo[35] whether the district court properly characterized evidence related to DBSI Group's failure to inform lenders that properties securing their loans were sold to TIC investors as evidence of "other act[s]" pursuant to Federal Rule of Evidence 404(b). This evidence was admissible as evidence of the very acts charged in the indictment. *Loftis*, 843 F.3d at 1176–77. The practice was part and parcel of Appellants' scheme to defraud and their efforts to mislead TIC investors[36] regarding their purchases: an encumbered property where the very sale to the TIC investors could trigger a technical default and ultimately, foreclosure on the property. Moreover, the practice allowed DBSI Group to acquire properties at a lower cost, and DBSI Group would not have been able to purchase and resell certain properties without those benefits. Because "Rule 404(b) applies solely to evidence of 'other' acts," the district court properly determined that the rule did not bar the admission of this evidence. *See id.*; *see also United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012–13 (9th Cir. 1995).

---

[35]*United States v. Loftis*, 843 F.3d 1173, 1176 n.1 (9th Cir. 2016).

[36]There was no evidence that TIC investors were aware of this practice.

22

(K)    Constructive amendment of the indictment

Jeremy and David argue that the indictment was constructively amended because it did not charge fraud related to Master Leaseco, but the prosecution's evidence included Jeremy's moving money into Master Leaseco's accounts prior to its audits. *See United States v. Ward*, 747 F.3d 1184, 1189, 1192 (9th Cir. 2014).[37] We reject this argument because the Master Leaseco fraud was sufficiently charged in the indictment. The indictment was not constructively amended. *See United States v. Hartz*, 458 F.3d 1011, 1021 (9th Cir. 2006).[38]

(L)    Prosecutorial misconduct during closing argument

There was no error, harmless or otherwise,[39] in the prosecutor's comment on the defense's ability to subpoena missing witnesses or in its description of the intent required for securities fraud. First, the prosecutor's comment regarding the defense's subpoena power did not touch on the Appellants' failure to testify or shift the burden of proof to the Appellants, and was proper rebuttal in light of the closing argument of one of the Appellants. *See id.* at 1250; *United States v.*

---

[37]They concede that this issue is reviewed for plain error.

[38]Because the proof matched the allegations of the indictment, there was also no variance. *See Ward*, 747 F.3d at 1189.

[39]*United States v. Cabrera*, 201 F.3d 1243, 1246 (9th Cir. 2000).

23

*Williams*, 990 F.2d 507, 510 (9th Cir. 1993). Second, the prosecutor correctly told the jury that securities fraud did not require an "'intent to cheat,'" specifically responding to the Appellants' argument that they did not intend to cheat investors. This is far short of a statement that the government did not have to prove any fraudulent intent for securities fraud. There was no prosecutorial misconduct.

(M)　Cumulative error

We reject the Appellants' argument that the district court's errors cumulatively require reversal. Most of the district court's rulings were not erroneous, and as to the particular rulings that were erroneous but nevertheless did not require reversal individually, we likewise conclude that their cumulative effect was harmless. *See United States v. Fernandez*, 388 F.3d 1199, 1256–57 (9th Cir. 2004), *modified*, 425 F.3d 1248, 1249 (9th Cir. 2005); *United States v. Necoechea*, 986 F.2d 1273, 1282–83 (9th Cir. 1993).

(N)　Douglas's sentence

Douglas challenges his sentence on the grounds that the district court procedurally erred in calculating the loss attributable to his offenses, and that his below-Guidelines sentence was substantively unreasonable. *See United States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008) (en banc); *see also United States v. Gasca-Ruiz*, 852 F.3d 1167, 1170 (9th Cir. 2017) (en banc).

24

Clear and convincing evidence[40] supported the district court's calculation of the reasonably foreseeable actual loss[41] attributable to Douglas's fraud as $103,466,840: the sum of the purchase premiums paid by investors in connection with the TIC offerings for which Douglas was convicted and the amount raised in the 2008 Notes Offering, reduced by the amount distributed by the bankruptcy trustee to victims of the 2008 Notes Offering. The record demonstrates that it was also a reasonable estimate[42] of the loss. The district court did not clearly err by calculating the loss from Douglas's fraud using this measure of actual loss, in lieu of Douglas's preferred alternative measure of his gain from the fraud. *See* USSG § 2B1.1 comment. (n.3(B)).

The district court also did not abuse its discretion[43] in sentencing Douglas to concurrent prison sentences of 60 months for securities fraud and 240 months for wire fraud. Douglas's below-Guidelines sentence was substantively reasonable in light of the district court's thorough consideration of the applicable sentencing

---

[40]*See United States v. Staten*, 466 F.3d 708, 717–18 (9th Cir. 2006).

[41]USSG § 2B1.1 comment. (n.3(A)(i), (iv)); *see also United States v. Morris*, 744 F.3d 1373, 1375 (9th Cir. 2014).

[42]*United Staets v. Garro*, 517 F.3d 1163, 1167 (9th Cir. 2008); *see also* USSG § 2B1.1 comment. (n.3(C)).

[43]*United States v. Autery*, 555 F.3d 864, 871 (9th Cir. 2009).

25

criteria,[44] including the seriousness of the offenses, Douglas's personal characteristics, his role in the offenses, and the staggering losses to the victims. *See United States v. Bendtzen*, 542 F.3d 722, 729 (9th Cir. 2008).

    (O)   Restitution

We review the district court's factual findings supporting its $32,158,501 order of restitution[45] against Ellison, David, and Jeremy for clear error. *See United States v. Thomsen*, 830 F.3d 1049, 1064 (9th Cir. 2016).[46] The government concedes that the order "double-counted" the victim investors' accountable reserves; accordingly, we vacate the restitution order so that it may be reduced by $3,408,413 to reflect the victims' actual losses. *See Thomsen*, 830 F.3d at 1065. However, we reject Ellison's, David's, and Jeremy's argument that individual victims and their loss amounts were not sufficiently identified. *See* 18 U.S.C. § 3663A(c)(1)(B). The district court did not clearly err by relying on the government's master spreadsheet, which contained the identity of and amount of

---

[44] 18 U.S.C. § 3553(a).

[45] 18 U.S.C. § 3663A(c)(1)(A)(ii); *United States v. Gordon*, 393 F.3d 1044, 1048 (9th Cir. 2004).

[46] Douglas appeals the restitution and forfeiture orders against him only on the ground that they cannot stand if his convictions are overturned. Because we affirm his convictions, we also affirm the restitution and forfeiture orders against him.

26

loss for each victim.

(P)    No Knowledge Clause (15 U.S.C. § 78ff(a))

The district court properly interpreted[47] the No Knowledge Clause as requiring that Jeremy and David prove "they were unaware that it was a violation of a rule or regulation to willfully engage in any act or course of business that operates as a fraud or deceit upon another person." *See Reyes*, 577 F.3d at 1081; *see also United States v. Laurienti*, 731 F.3d 967, 972 (9th Cir. 2013). Perhaps, it is true that in light of the nature of a Rule 10b-5 violation, which requires culpable intent, a convicted defendant would struggle to prove that he did not know that his conduct violated a rule or regulation prohibiting fraud or deceit. *See O'Hagan*, 521 U.S. at 665–66, 117 S. Ct. at 2214; *see also Tarallo*, 380 F.3d at 1188. But that difficulty arises from the very nature of the conduct prohibited by Rule 10b-5, not from any defect in the construction or interpretation of the No Knowledge Clause. Moreover, the district court did not clearly err by determining that the affidavits submitted by Jeremy and David failed to show by a preponderance of the evidence that they were "unaware that federal law prohibits securities fraud." *See*

---

[47] *See United States v. Onyesoh*, 674 F.3d 1157, 1158 (9th Cir. 2012).

27

*Laurienti*, 731 F.3d at 972.

**AFFIRMED IN PART, VACATED IN PART,**[48] **AND REMANDED.**[49]

---

[48]This as to the amount of the restitution order against Ellison, David, and Jeremy. *See supra.* at 25–26.

[49]We also deny Appellants' Motion to Supplement the Record on Appeal, which was filed January 15, 2016.