COOK, Circuit Judge, dissenting. I respectfully dissent. I would affirm the district court’s ruling on the sentencing enhancements and the 120-month sentence. I do not think the district court clearly erred in concluding that Gillespie pointed his gun at Officer Williams. Judge Collier deemed the Officer’s testimony credible, finding no reason to doubt his explanation that the gun-pointing took place off-camera. And Officer Williams had ample opportunity—direct, cross, redirect, and recross examinations—to walk back his account, but he remained steadfast even after watching the dash-cam video at various speeds and reviewing the still frames. I disagree that the dash-cam video “completely undermines the Officer’s testimony.” (Maj. Op. at 476.) Rather, as in United States v. Braswell, “the video simply does not show the events in question .... Therefore the video neither confirms nor disproves the government’s argument” about the gun-pointing. No. 16-6092, 704 Fed.Appx. 628, 533, 2017 WL 3588305, at *3 (6th Cir. Aug. 21, 2017). The Braswell panel did not overturn the lower court’s credibility determination, and neither should we in the instant case. Id. 704 Fed.Appx. at 533-34, 2017 WL 3588305, at *4; see also United States v. Navarro-Camacho, 186 F.3d 701, 707 (6th Cir. 1999) (“[T]he simple fact that we have been able to evaluate [a videotape] on direct review does not change the fact that we review the district court’s findings of fact for clear error ..., Where, as here, factual findings rest in large part on credibility determinations, we afford district courts even greater deference.”). The majority claims that, in order to accept Officer Williams’s testimony, we must believe a laundry list of things about what Gillespie did upon exiting the car. (Maj. Op. at 476.) But these actions need not occur seriatim. Surely you can open a car door while simultaneously holding something else in your free hand and making eye contact with someone. It seems at least plausible to me that Gillespie, while off-camera, exited the Ford Explorer pointing the gun at Officer Williams. See Anderson v. Bessemer City, 470 U.S. 564, 573-74, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (“If the district court’s account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.”). Even if the gun-pointing finding was clearly erroneous, Gillespie nonetheless displayed the firearm to Officer Williams. And that is what Tenn, Code Ann. § 39-13-102(a)(1)(A)(iii) requires. Gillespie may not have wanted Officer Williams to fear for his physical safety. But in Tennessee, one “can act knowingly irrespective of his or her desire that the conduct or result will occur.” State v. Gray, 960 S.W.2d 598, 604 (Tenn. Crim. App. 1997). I disagree with the majority’s conclusion that “nothing in the circumstances suggests that Gillespie” knowingly caused Officer Williams to reasonably fear imminent bodily injury when he displayed the gun. (Maj. Op. at 477.) Here are the circumstances. Gillespie was riding in a Ford Explorer involved in two drive-by shoot-mgs earlier that day. The driver sped away when the police attempted a traffic stop, leading to a high-speed nighttime chase through residential areas of East Chattanooga. The Explorer eventually came to an abrupt stop within feet of the police cruiser. Gillespie quickly opened the right rear passenger door of the car—the side closest to Officer Williams—and bolted out with a gun in his right hand—the hand closest to Officer Williams. Gillespie could have left his gun in the Explorer, but he didn’t. He could have thrown the gun out the car window, but he didn’t. The majority describes this as a man “taking his possessions with him,” as if Gillespie was getting out of the car holding a bag of groceries. (Maj. Op. at 477.) Frankly, under these circumstances, I see no reason for Gillespie to have carried his gun with him other than to threaten with it or use it. Turning to the district court’s ultimate sentencing decision, I would affirm because I discern no abuse of discretion. I view Gillespie’s sentence as procedurally reasonable; the district court evaluated both parties’ arguments, considered the 18 U.S.C. § 3553(a) factors, and sufficiently articulated its reasons for imposing a 120-month sentence. See United States v. Bolds, 511 F.3d 568, 581 (6th Cir. 2007). And to me the sentence passes muster as substantively reasonable, with the record including ample evidence validating the district court’s decision. Per his Presen-tence Investigation Report, Gillespie’s criminal history dates to 2003. In 2008 alone, Gillespie was charged with aggravated assault (twice), disorderly conduct, driving without a license, and attempted first degree murder. Given that these were juvenile adjudications, however, Gillespie did not receive any points that would impact his criminal history categorization. His adult criminal activities are similarly serious and include carrying weapons on school property, threatening to burn down and shoot up multiple houses, using a pistol during a domestic assault, and evading arrest.[2] What’s more, the district court observed that Gillespie, during his allocution, failed to demonstrate “any real appreciation of the danger that he posed, the harm that he has caused, and ... a way of life that is just replete with violence.” For these reasons, I respectfully dissent. . And that says nothing of the charges against Gillespie that were dismissed for one reason or another—disorderly conduct, aggravated assault, theft, and domestic assault, to name several.